**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BILL KNIPP | ) | CASE NO. |
| 847 Lenox Ave | ) | |
| Mansfield, OH 44906 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | **COMPLAINT FOR DAMAGES** |
| | ) | |
| v. | ) | **JURY DEMAND ENDORSED HEREIN** |
| | ) | |
| CITY OF ASHLAND, OHIO | ) | |
| c/o Richard P. Wolfe, II | ) | |
| Office of Director of Law | ) | |
| 1213 E. Main Street | ) | |
| Ashland, Ohio 44805 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| CHAD ENDERBY | ) | |
| 33 S Countryside Dr | ) | |
| Ashland OH 44805 | ) | |
| -and- | ) | |
| | ) | |
| JASON COUNTS | ) | |
| 903 Hillcrest Dr | ) | |
| Ashland OH 44805 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| NICK SANTORIELLA | ) | |
| 2150 Sprucewood Cir | ) | |
| Mansfield, OH 44903 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Bill Knipp, by and through undersigned counsel, as his Complaint against

Defendants states and avers the following:

## PARTIES

1. Knipp is a resident of Richland County, Ohio.

2. The City of Ashland, Ohio ("Ashland") is an incorporated municipality within the State of Ohio located in and holding the property discussed in this Complaint in Ashland County, Ohio.

3. Upon information and belief, Chad Enderby ("Enderby") is a resident of Ashland County, Ohio.

4. Upon information and belief, Jason Counts ("Counts") is a resident of Ashland County, Ohio.

5. Upon information and belief, Nick Santoriella ("Santoriella") is a resident of Richland County, Ohio.

## PERSONAL JURISDICTION

6. Ashland is an incorporated municipality within the State of Ohio; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio.

7. Enderby, Counts, and Santoriella are residents of Ohio; contract with companies in Ohio, and own or rent property in Ohio.

8. As such, the exercise of personal jurisdiction over Defendants comports with due process.

9. This cause of action arose from or relates to events that occurred in this district, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction of this case under pursuant to 28 U.S.C. § § 1331 inasmuch the matters in controversy are brought pursuant to the Americans with Disabilities Act ("ADA")

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Knipp's state law claims under Ohio R.C. § 4112.02(A), and any other Ohio claims made herein because those claims derive from a common nucleus of operative facts.

12. Venue is proper in this District because Ashland resides in this District (28 U.S. Code § 1391(b)(1).

## ADMINISTRATIVE HISTORY.

13. Within two years of the conduct alleged below, Knipp filed Charges of Discrimination with the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC") against Defendants ("Discrimination Charges").

14. Knipp alleged in his Discrimination Charges that Ashland wrongfully terminated Knipp because of his disability and for opposing discrimination against Knipp based on disability, and further, that Enderby, Counts, and Santoriella had aided and abetted, compelled, incited and or/coerced Ashland's unlawful discriminatory conduct.

15. On or about March 6, 2025, Notice of Right to Sue letters were issued and mailed to Knipp against Defendants ("Right to Sue Letter").

16. Knipp has properly exhausted his administrative remedies against Defendants pursuant to Ohio R.C. § 4112.052(B)(2)(b).

## FACTUAL ALLEGATIONS

17. Knipp is a former employee of Ashland, where he worked as an Equipment Operator.

18. Knipp was first hired by Ashland on or about January 8, 2024.

19. On January 31, 2024, Ashland assigned Knipp to scoop guardrail posts into a loader.

20. A true and accurate picture of the guardrail posts Knipp was assigned to load follows:

3



21. The guardrail posts were heavy, cumbersome, and dangerous if mishandled.

22. Phil (Last Name Unknown, "Phil") was another Ashland employees who was assigned to line up the guardrail posts for Knipp to pick up.

23. Phil mishandled the guardrail posts.

24. Due to Phil's mishandling of the guardrail posts, the posts were not lined up straight.

25. Phil tried to shove one guardrail post straight.

26. Due to the wet conditions and Phil's mishandling of the guardrail post, that guardrail post overshot where Phil had intended it to go and hit Knipp's left knee and shin.

27. Due to Phil's mishandling the guardrail posts so that they hit Knipp, Knipp's left knee became severely overextended.

28. As a result of Knipp's knee overextension, he suffered severe knee pain and swelling, sprains of collateral ligaments, and burning in the affected area which has persisted to the present day.

4

29. That same day, January 31, 2024, Knipp made a written statement to Ashland about his pain, a true and accurate copy of which follows:

ASHLAND
EMPLOYEE'S STATEMENT

I, __Billy Knipp__ (Name) certify that on __1-31__ (Date), 20 _24_ at __10:00-10:50__ (Time) (a.m. or p.m.), I sustained an injury to my __Left Knee__ (Part of Body) _____ that occurred as follows: (Describe the incident in detail, stating part of body injured) __As The loader went To__ __Scoop the Guardrail post, They werent lined up straight. Phil__ __went To Shove I over with his foot and The post flew over__ __into my Left Knee, over extending it backwards.__

Has this body part been previously injured? ☐ Yes ☒ No  If yes, when? _____

Place incident occurred _____

Did the incident occur while you were working (on the clock)? ☒ Yes ☐ No

Did the incident occur while you were performing your regularly assigned job/duty? ☒ Yes ☐ No

Did the incident occur on employer's property? ☒ Yes ☐ No

Name(s) of Witness(s) __Phil__ __Jeremy__

Date/Time and to whom the accident was reported to __100 and filled out paperwork__

Name of Medical Provider and Treating Physician _____ Provider Phone #_____

Provider Address _____

Employee address _____

Phone Number _____ Date of Hire __1-8-24__

Building/Occupation __Street Department__ Supervisor __Nick - Joe__

Signature of Employee __Billy R Knipp__ Date __1-31-24__

30. On the following day, February 1, 2024, Knipp's knee grew even more swollen and painful.

31. Knipp's mobility had deteriorated to the point that he needed treatment.

32. Knipp went to the hospital for treatment.

33. Knipp's medical provider, Suzanne M. Newman APRN-CNP ("Newman") recommended that Knipp remain out of work for a few weeks to heal his knee.

34. A few weeks passed, and Knipp's knee had yet to return to full health.

5

35. Despite his continued difficulties with his knee, Knipp's knee had, however, sufficiently healed to allow Knipp to return to work under medical restrictions.

36. Newman required Knipp to sit for 6 to 8 hours and refrain from climbing, stooping, bending, or standing.

37. A true and accurate copy of Knipp's medical restrictions from Newman follows:



University Hospitals

UH BANEY HEALTH CENTER
1941 S BANEY RD
STE 300
ASHLAND OH 44805-8848
Dept: 419-207-2663

February 22, 2024

Patient:      **Billy R Knipp**
Date of Birth: **11/19/1969**
Date of Visit: **2/22/2024**

To Whom It May Concern:

It is my medical opinion that Billy Knipp should be on the restrictions stated on his MEDCO-14 that was sent to the MCO, Minutemen. Mostly seated work, no climbing of stairs, ambulate hourly as tolerated, knee brace with weight bearing activity, frequent elevation and ice. Topical Diclofenac gel to left knee 4x's day as needed, Ibuprofen (Advil, Motrin) 3x's day as needed for pain, stiffness, and swelling. Follow up appointment is scheduled for TBD for reevaluation.

If you have any questions or concerns, please don't hesitate to call 419-207-2663.

Sincerely,

Suzanne M Newman, APRN-CNP

CC: No Recipients

38. In conjunction with Knipp's visit to University Hospitals, Newman examined Knipp and filled out a Medco-14 form detailing recommended restrictions on Knipp for his return to work.

6

39. A true and accurate copy of Knipp's Medco-14 form follows:

40. In response to Knipp's doctor's note and medical information, Ashland's Human Resource Director Chad Enderby ("Enderby") instructed Knipp to report to work on February 26, 2024 to begin a light duty temporary assignment.

41. A true and accurate copy of Enderby's letter offering the light duty assignment follows:



42. On February 26, 2024, Knipp returned to work with the aforementioned medical restrictions.

43. When Knipp arrived on February 26, 2024 for his light duty assignment, Streets & Utilities Dept Superintendent Nick Santoriella ("Santoriella") instructed Knipp to clean baseball bases and scrape paint off trashcan lids.

44. Knipp was assigned to perform this task in a garage.

45. Although the garage had a heating system, the heating system was not operational when Santoriella assigned Knipp to work in the garage.

46. Due to the winter weather, temperatures in the unheated garage hovered around 36 °F.

47. Throughout the day, the garage door was often kept open, exposing Knipp to cold winds from outside.

48. Knipp's medical restrictions required Knipp to perform all or most of his work seated.

49. Knipp asked Santoriella for a table to place the bases and lids on while Knipp worked on them.

50. Santoriella was visibly angered at Knipp's request for a table.

51. Santoriella snapped at another Ashland employee who was present, "Can you help me get him a fuckin table?"

52. Santoriella's unmerited outburst of profanity made Knipp feel unsafe and uncomfortable.

53. The provided table was small and could only hold a few bases or cans at a time.

54. The provided table sat at an awkward height, causing Knipp to move in awkward ways.

55. While performing the tasks Santoriella assigned, Knipp had to repeatedly get up out of his chair, bend over to pick up a baseball base or trashcan lid, and then return to his seat.

56. This repetitive motion combined with the sub-optimum working conditions caused Knipp's knee to swell up again over the evening of February 26, 2024.

57. Santoriella required Knipp to work in subpar conditions in a cold garage due to Knipp's knee injury.

58. Santoriella required Knipp to work in subpar conditions in a cold garage due to Knipp's disability.

9

59. Santoriella requiring Knipp to work in subpar conditions in a cold garage was an adverse employment action.

60. Santoriella did not offer Knipp any alternative accommodation for his knee injury.

61. Santoriella did not provide any objective evidence that providing Knipp's requested accommodation would impose an unreasonable burden on Ashland.

62. Santoriella did not request a medical release to allow Knipp to work as they wished him to.

63. Santoriella did not seek to consult with Knipp's treating physician.

64. Santoriella did not send Knipp out for a medical examination by an Independent Medical Examiner.

65. Santoriella did not seek out any expert medical advice.

66. Santoriella did not seek a vocational assessment of Knipp.

67. Santoriella failed to engage Knipp in an interactive dialog to seek out reasonable accommodations that would not impose an unreasonable burden on Ashland.

68. Santoriella failed to engage in the interactive process mandated by the ADA and Ohio law.

69. On February 27, 2024, Knipp called off work due to his swollen knee.

70. Knipp returned to University Hospitals to seek further treatment.

71. On February 28, 2024, Knipp again returned to work at Ashland.

72. Knipp resumed scraping the paint from trashcan lids as assigned two days prior.

73. Despite the intermittent effects of his injured knee, Knipp was able to perform the essential functions of his job.

74. While Knipp was working, Herb (last name unknown, "Herb"), an employee of the parks department and former police officer came and yelled at Knipp.

75. Herb angrily and with a raised voice screamed that Knipp was "not working fast enough".

10

76. Herb's invective was delivered with a shocking level of anger and intensity which made Knipp fearful and uncomfortable.

77. After Herb left, Knipp reported Herb's screaming fit and the general harassment and discrimination Knipp faced (the "Report of Discrimination") to Ashland Director of Parks and Recreation Jason Counts ("Counts").

78. Knipp specifically noted in his Report of Discrimination how he felt stigmatized and discriminated against due to his continuing struggles with his knee.

79. Knipp discussed in his Report of Discrimination how Herb and others treated Knipp as though he was unable to properly perform his job due to his knee injury.

80. Knipp discussed in his Report of Discrimination how Herb and others treated Knipp as though he was lazy or unfit to work due to his knee injury.

81. Counts took no action to discipline or cause others to discipline Santoriella or Herb based on Knipp's Report of Discrimination.

82. Counts took no action to prevent Santoriella and Herb from taking further actions like those detailed in Knipp's Report of Discrimination.

83. Counts took no action to educate Ashland's employees on how to avoid further actions like those detailed in Knipp's Report of Discrimination.

84. On information and belief, at all times referenced herein, Ashland had a policy prohibiting discrimination and/or harassment based on disability ("Discrimination Policy").

85. Santoriella and Herb's assignment of Knipp to work in subpar conditions, hostility towards Knipp for requesting an accommodation, and disdain for Knipp's disability violated Ashland's Discrimination Policy.

86. Ashland refused to act in accordance with their own Discrimination Policy to protect Knipp

11

from Santoriella and Herb's assignment of Knipp to work in subpar conditions, hostility towards Knipp for requesting an accommodation, and disdain for Knipp's disability.

87. Alternatively, it is permissible at Ashland for able-bodied employees to assign disabled employees to work in subpar conditions, to show hostility towards disabled employees for requesting an accommodation, and to show disdain for the disabilities of disabled employees.

88. Upon information and belief, Ashland has a policy that requires an investigation of allegations of conduct that violates the Discrimination Policy ("Investigation Policy").

89. The Investigation Policy requires Counts to interview the complainant and all witnesses to the conduct alleged to have violated the Discrimination Policy.

90. The Investigation Policy requires Counts to take written statements from the complainant and all witnesses to the conduct alleged to have violated the Discrimination Policy.

91. Counts violated Ashland's Investigation Policy when Counts refused to investigate Knipp's Report of Discrimination and instead dismissed Knipp's Report of Discrimination out of hand.

92. Counts did not investigate Knipp's Report of Discrimination or cause these acts to be investigated.

93. Instead of investigating Knipp's Report of Discrimination of discrimination, Counts dismissed Knipp's concerns and took no action to address Santoriella and Herb's assignment of Knipp to work in subpar conditions, hostility towards Knipp for requesting an accommodation, and disdain for Knipp's disability.

94. By failing to investigate or address Knipp's Report of Discrimination, Counts and Ashland endorsed and ratified Santoriella and Herb's conduct.

95. It is well settled that an employer's failure to investigate, or take prompt remedial action against discrimination, thus allowing the discrimination to continue, is also an adverse employment action. *Ellis v. Jungle Jim's Mkt., Inc.*, 12th Dist. No. CA2014-12-254, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 39.

96. On February 29, 2024, Knipp met with Counts, Santoriella, Vehicle Maintenance Systems Coordinator Joe Roland, Enderby, and two other Ashland employees.

97. During this meeting, Enderby terminated Knipp's employment.

98. Enderby's termination of Knipp's employment came only a day after Knipp's protected reports of discrimination to Counts and other Ashland employees (the "Reports of Discrimination")

99. None of the Ashland employees present provided any detail about the reasons for Knipp's termination, merely pointing Knipp to a termination letter signed by Enderby which was provided to Knipp during this meeting.

100. As justification for terminating Knipp, Enderby claimed that Knipp had behaved uncourteously, worked poorly with others, and refused to accept assignments within his job description.

101. Enderby had failed to investigate whether there was any basis to these allegations against Knipp before terminating Knipp.

102. On information and belief, this violated Ashland's Investigation Policy.

103. On information and belief, the Investigation Policy requires Enderby to interview the complainant and all witnesses to the conduct alleged.

104. On information and belief, the Investigation Policy requires Enderby to take written statements from the complainant and all witnesses to the conduct alleged.

105. On information and belief, Enderby violated Ashland's Investigation Policy when Enderby refused to investigate the allegations against Knipp before terminating his employment.

106. The allegations against Knipp no basis in fact.

107. Enderby intended the allegation that Knipp behaved uncourteously, worked poorly with others, and refused to accept assignments within his job description to disguise Defendants' discrimination and/or harassment of Knipp based on Knipp's disability.

108. Enderby intended the allegation that Knipp behaved uncourteously, worked poorly with others, and refused to accept assignments within his job description to disguise Ashland's retaliation based on Knipp's having opposed unlawful discrimination and or harassment based on Knipp's disability.

109. Enderby intended the allegation that Knipp behaved uncourteously and worked poorly with other to specifically disguise the unlawful harassment of Knipp by Santoriella, Herb, and others based on Knipp's disability.

110. Enderby intended the allegation that Knipp refused to accept assignments within his job description to disguise Ashland's failure to properly accommodate Knipp's disability.

111. Based on the facts and circumstances known or provided to Enderby, Enderby did not and could not have a reasonable belief that Knipp behaved uncourteously, worked poorly with others, and refused to accept assignments within his job description.

112. In a rush to discriminate and/or retaliate against Knipp, Enderby skipped over Ashland's progressive disciplinary process to terminate Knipp.

113. Ashland's termination of Knipp was an adverse action.

114. Ashland's termination of Knipp was an adverse employment action.

14

115. As a result of Defendants' unlawful conduct, Knipp has suffered and continues to suffer damages.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA (42 U.S.C. 12101 et. seq. (Against Ashland Only)

116. Knipp restates every prior paragraph of this Complaint, as if fully restated herein.

117. Knipp suffers from a knee injury.

118. As a result of his knee injury, Knipp is disabled as that term is defined in 42 U.S. Code § 12102(1)(A) or (B).

119. In the alternative, Ashland perceived Knipp as being disabled as that term is defined in 42 U.S. Code § 12102(1)(C).

120. Knipp's knee injury constituted a physical impairment.

121. Knipp's knee injury substantially impaired one or more of his major life activities including working.

122. Ashland perceived Knipp's knee injury to substantially impair one or more of his major life activities including working.

123. Ashland treated Knipp differently than other similarly-situated employees based on his knee injury.

124. Ashland treated Knipp differently than other similarly-situated employees based on his disability and/or perceived disability.

125. Ashland terminated Knipp without just cause.

126. Ashland terminated Knipp based on his knee injury.

127. Ashland terminated Knipp based on his disability and/or perceived disability.

128. Ashland violated 42 U.S. Code § 12101 *et. seq*. when it terminated Knipp based on his knee injury.

129. Ashland violated 42 U.S. Code § 12101 *et. seq.* when it terminated Knipp based on his disability and/or perceived disability.

130. As a result of Ashland's unlawful actions against Knipp in violation of 42 U.S. Code § 12101 *et. seq.* Knipp has been denied employment opportunities providing substantial compensation and benefits.

131. As a result of Ashland's unlawful actions against Knipp in violation of 42 U.S. Code § 12101 *et. seq.* Knipp has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

132. In Ashland's unlawful actions as alleged above, Ashland acted with malice or reckless indifference to Knipp's 42 U.S. Code § 12101 *et. seq.* rights, thereby entitling Knipp to an award of punitive damages.

133. To remedy the violations of Knipp's 42 U.S. Code § 12101 *et. seq.* rights, Knipp requests that the Court award him the relief prayed for below.

**COUNT II: HOSTILE WORK ENVIRONMENT BASED ON DISABILITY IN VIOLATION OF 42 U.S.C. 12101 *et seq.*
(Against Ashland Only).**

134. Knipp restates every paragraph of this Complaint as if fully restated herein.

135. During his employment with Ashland, Knipp was subjected to offensive and harassing conduct by Santoriella and Herb based on Knipp's disability.

136. Santoriella and Herb's harassment of Knipp was sufficiently severe or pervasive to affect the terms, conditions, or privileges of Knipp's employment with Ashland.

137. Herb and Santoriella's conduct had the purpose and/or effect of unreasonably interfering with Knipp's job duties and created an intimidating, hostile, and offensive working environment. *See* 29 C.F.R. § 1604.11(a)(3).

16

138. Ashland knew or should have known of Santoriella and Herb's harassment of Knipp due to Knipp's Report of Discrimination.

139. Ashland condoned, tolerated, and ratified Santoriella and Herb's harassment of Knipp.

140. Santoriella and Herb's harassment was offensive to Knipp.

141. Santoriella and Herb's harassment created a work environment that the reasonable person similarly situated to Knipp would find hostile and/or abusive.

142. As a result of Ashland's allowing a hostile work environment to flourish in violation of the ADA, Knipp has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

143. In its unlawful actions as alleged above, Ashland has acted with malice or reckless indifference to Knipp's rights, thereby entitling Knipp to an award of punitive damages.

144. To remedy the violations of Knipp's ADA rights, Knipp requests that the Court award him the relief prayed for below.

## COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. § 12101 *et seq.* (Against Ashland Only).

145. Knipp restates every paragraph of this Complaint as if fully restated herein.

146. Knipp opposed what Knipp reasonably believed to be Santoriella and Herb's unlawful discrimination and/or harassment based on disability.

147. Knipp reported Santoriella and Herb's unlawful conduct to Ashland.

148. Rather than addressing Santoriella and Herb's unlawful conduct, in response to Knipp's Report of Discrimination, Ashland terminated Knipp.

149. Ashland had not decided to take this adverse action against Knipp until after Knipp made the Report of Discrimination.

17

150. Ashland only decided to take adverse action against Knipp after Knipp had made the Report of Discrimination.

151. Pursuant to 42 U.S.C.A § 1201, it is an unlawful discriminatory practice to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter"

152. As a result of Knipp's opposition to Santoriella and Herb's unlawful actions, Ashland terminated Knipp.

153. Ashland's conduct violated 42 U.S.C. § 12101 *et seq*.

154. As a result of Ashland's retaliation against Knipp in violation of Title VII, Knipp has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Knipp to injunctive, equitable, and compensatory monetary relief.

155. As a result of Ashland's retaliation against Knipp in violation of Title VII, Knipp has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

156. In Ashland's retaliatory actions as alleged above, Ashland has acted with malice or reckless indifference to Knipp's rights, thereby entitling Knipp to an award of punitive damages.

157. To remedy these violations of Knipp's Title VII rights, Knipp requests that the Court award him the relief prayed for below.

**<u>COUNT IV: DISABILITY DISCRIMINATION</u>**
**<u>IN VIOLATION OF OHIO R.C. § 4112.02(A), *et seq.*</u>**
**<u>(Against Ashland Only)</u>**

158. Knipp restates every paragraph of this Complaint, as if fully restated herein.

159. At all times referenced herein, Knipp suffered from knee injury.

18

160. knee injury is a "disability" and a "physical/mental impairment" as those terms are defined by Ohio R.C. § 4112.01(A)(13).

161. At all times referenced herein, Knipp could perform the essential duties of Knipp's job, assuming the provision of accommodations.

162. Ashland was aware that Knipp had knee injury.

163. Ashland was aware that Knipp was disabled.

164. In the alternative, Ashland regarded Knipp as disabled and/or as suffering from physical/mental impairments due to Knipp's knee injury.

165. Ashland terminated Knipp because of Knipp's knee injury.

166. Ashland terminated Knipp, which was an adverse employment action against Knipp.

167. Ashland terminated Knipp in violation Ohio R.C. § 4112.02(A) because Ashland took such actions because of Knipp's knee injury.

168. As a result of Ashland's unlawful acts against Knipp in violation of Ohio R.C. § 4112.02 (A) Knipp has been denied employment opportunities providing substantial compensation and benefits.

169. As a result of Ashland's unlawful acts against Knipp in violation of Ohio R.C. § 4112.02 (A), Knipp has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

170. In Ashland's unlawful acts as alleged above, Ashland acted with malice or reckless indifference to Knipp's Ohio R.C. § 4112.02(A) rights, thereby entitling Knipp to an award of punitive damages.

171. To remedy the violations of Knipp's Ohio R.C. § 4112.02(A) rights, Knipp requests that the Court award him the relief prayed for below.

**COUNT V: HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY IN VIOLATION OF OHIO R.C. § 4112.02.**
**(Against Ashland Only)**

172. Knipp restates every paragraph of this Complaint as though fully restated herein.

173. Knipp is a member of a statutorily protected class based on his disability under Ohio R.C. § 4112.02(A).

174. During Knipp's employment with Ashland, Santoriella, Herb, and other Ashland employees continually subjected Knipp to offensive and harassing conduct.

175. This harassment was severe, pervasive, and highly offensive to Knipp.

176. This harassment interfered with Knipp's ability to perform his job duties, through no fault of his own.

177. This harassment created a hostile and/or abusive work environment for Knipp.

178. This harassment created a situation that a reasonable person similarly situated to Knipp would perceive as a hostile and/or abusive work environment.

179. This harassment caused the termination of Knipp.

180. Ashland was aware or should have been aware of this harassment against Knipp.

181. Ashland condoned, tolerated, and/or ratified the harassment against Knipp.

182. By condoning, tolerating, and/or ratifying the harassment against Knipp, Ashland violated Ohio R.C. § 4112.02.

183. As a result of Ashland's unlawful acts in violation of Ohio R.C. § 4112.02, Knipp has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Knipp to injunctive, equitable, and compensatory monetary relief.

184. As a result of Ashland's unlawful acts in violation of Ohio R.C. § 4112.02, Knipp has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

185. In Ashland's unlawful acts, Ashland has acted with malice or reckless indifference to Knipp's rights, thereby entitling him to an award of punitive damages.

186. To remedy the violations of Knipp's Ohio R.C. § 4112.02 rights, Knipp requests that the Court award the relief prayed for below.

## COUNT VI: UNLAWFUL RETALIATION IN VIOLATION OF OHIO R.C. § 4112.02(I).
### (Against All Defendants)

187. Knipp restates every paragraph of this Complaint, as if fully restated herein.

188. Pursuant to Ohio R.C. § 4112.02(I), it is an unlawful discriminatory practice

> to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

189. Knipp made the Report of Discrimination to Counts.

190. After the Report of Discrimination, Defendants terminated Knipp in retaliation.

191. Defendants' actions were retaliatory in nature based on Knipp's opposition to and good faith Report of Discrimination of what he reasonably believed was unlawful discrimination and/or harassment.

192. Defendants terminated Knipp in violation of Ohio R.C. § 4112.02(I).

193. As a result of Defendants' retaliation against Knipp in violation of Ohio R.C. § 4112.02(I), Knipp has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Knipp to injunctive, equitable, and compensatory monetary relief.

21

194. As a result of Defendants' retaliation against Knipp in violation of Ohio R.C. § 4112.02(I), Knipp has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

195. Defendants retaliated against Knipp with malice or reckless indifference to Knipp's rights, thereby entitling Knipp to an award of punitive damages.

196. To remedy the violations of Knipp's Ohio R.C. § 4112.02 rights, Knipp requests that the Court award him the relief prayed for below.

**COUNT VII: UNLAWFUL AIDING, ABETTING, COMPELLING AND INCITING OF DISCRIMINATION IN VIOLATION OF OHIO R.C. § 4112.02(J).**
**(Against Enderby, Counts, and Santoriella, Only)**

197. Knipp restates every prior paragraph of this Complaint, as if it were fully restated herein.

198. Pursuant to Ohio R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

199. Enderby, Counts, and Santoriella aided, abetted, incited, compelled, and/or coerced Ashland's adverse employment actions against Knipp including when Ashland terminated Knipp.

200. Enderby, Counts, and Santoriella violated Ohio R.C. § 4112.02(J) by aiding, abetting, inciting, compelling, and/or coercing Ashland's adverse employment actions against Knipp.

201. As a result of Enderby, Counts, and Santoriella's unlawful acts against Knipp in violation of the Ohio law, Knipp has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

202.  To remedy the violations of Knipp's Ohio R.C. § 4112.01 *et. seq.* rights, Knipp requests that the Court award him the relief prayed for below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bill Knipp requests judgment in his favor against Defendants, City of Ashland, Ohio and Chad Enderby, Jason Counts, and Nick Santoriella containing the following relief:

(a)  An order directing Defendants to place Knipp in the position Knipp would have occupied but for Defendants' unlawful treatment, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Knipp;

(b)  An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Knipp for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c)  An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Knipp for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Knipp's mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d)  An award of damages in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest, to compensate Knipp for harm to him professional and personal reputation and loss of career fulfillment;

(e)  An award of damages for all other monetary and/or non-monetary losses suffered by Knipp in an amount to be determined at trial, but in excess of $25,000.00, plus prejudgment interest;

(f)  An award of costs that Knipp has incurred in this action to the fullest extent permitted by law; and

(g)  Awarding such other and further relief that this Court deems necessary and proper.

23

Respectfully submitted,

*s/ Richard F. Protiva*
Chris P. Wido          (0090441)
Richard F. Protiva      (0095272)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Dr. Suite 200
Independence, OH 44131
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  chris.wido@spitzlawfirm.com
           richard.protiva@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Bill Knipp demands a trial by the maximum number of jurors permitted.

*s/ Richard F. Protiva*
Richard F. Protiva      (0095272)